## SCHULTZ BELTING Co. *v.* WILLEMSEN BELTING Co.

*(Circuit Court, E. D. Missouri, E. D.* October 30, 1889.)

PATENTS FOR INVENTIONS—ANTICIPATION.

Letters patent granted to one Schultz, April 19, 1876, for "a new article of manufacture,—leather having tanned surfaces and an interior of pliable raw hide,"—are void as similar leather has been made by the same process in various parts of the country before the letters issued, and the only discovery, if any, is that leather imperfectly tanned is for some uses preferable to perfectly tanned leather, and no such discovery is claimed.

In Equity. Bill to restrain infringement of patent.
*C. H. Krum* and *W. H. Thurston,* for complainant.
*Taylor & Pollard* and *Lubke & Muench,* for defendant.

THAYER, J. The specification in this case describes an alleged improvement in the method of manufacturing leather. The patentee says, in substance, that heretofore, in making leather, it has been customary

"to tan the hide through and through, the hide for that purpose being immersed in tan liquor for several months, and even years;" that by the old process the interior of the hide is tanned equally with the surface, the effect being to diminish the strength of the leather so produced as compared with raw hide.   He further states that if the raw hide is not immersed in tan liquor at all, but is merely "fulled, curried, and stuffed," while the hide becomes pliable, and its tensile strength is increased, yet it is not durable, and will lack body and finish.    To combine the advantages of raw hide and fully tanned leather, the patentee then describes a process of manufacturing leather that differs from the old process admitted to be in vogue, only in the respect, that the hide is immersed in tan liquor for a much shorter period,—say, from 8 to 10 days,—the result being that the outer surfaces of the hide are tanned, while the interior stratum is only partially tanned, and retains all the qualities, including the strength, of fulled and stuffed raw hide, but is not subject to decomposition.    Having described the process and the merits of the product, the claim of the patentee is as follows:   "As a new article of manufacture, leather having tanned surfaces and an interior of pliable raw hide, substantially as described."    It thus appears that the patent in this case covers an alleged new product, the same being the result of a new or improved process; and it is not denied that such a product may be the subject-matter of a valid patent.    *Smith* v. *Vulcanite Co.*, 93 U. S. 489;  *Vulcanite Co.* v. *Smith*, 1 Holmes, 354.    The contention is, however, that neither the process described, nor the product claimed in this patent, was new; and to this point the evidence for defendant, as well as for the complainant, was chiefly directed.

It will suffice to say that the testimony in the case shows to my entire satisfaction that prior to the granting of the Schultz patent on April 19, 1876, a very considerable amount of leather had been produced and sold at Louisville, Ky., Cincinnati, Ohio, and St. Louis, Mo., and probably at other points in the United States, having tanned surfaces and an interior stratum of pliable raw hide.    The testimony of all the witnesses supports that conclusion, and the fact is not seriously controverted by complainant's counsel.    I have no doubt, however, that very much of the leather of the kind last mentioned, that is shown to have been in the market prior to the date of complainant's patent, was what was regarded at the time as imperfectly tanned leather.    The leather in question in many instances no doubt was withdrawn from the tanning vats before it was tanned through and through, owing to the great demand for leather, and the desire of manufacturers to get their product on the market as soon as possible.    Probably the manufacturers of such leather and the dealers therein did not regard it as being either as serviceable or valuable as perfectly tanned leather.    But these concessions do not aid the complainant's case.    The fact remains that the product claimed as the result of an improved process was not new.    The same article had been produced before, and manufacturers knew very well how to produce it before Shultz filed his specification.    If he made any discovery it consisted in his finding out that leather imperfectly tanned—which every

tanner knew how to make, and many of them had made—was preferable for some uses (notably for belting) to perfectly tanned leather. But that discovery, even if it could be patented, has not been claimed. And I may further add in this connection that the greater tensile strength of leather imperfectly tanned (which is the chief merit claimed for complainant's leather when used for belting purposes) was a fact well known to tanners long before the date of complainant's patent. It was well·understood among tanners that raw hide had greater tensile strength than leather thoroughly tanned, and hence that a strip of leather with an interior stratum of raw hide between tanned surfaces was necessarily stronger than a strip of leather of the same dimensions tanned through and through. It will be understood, of course, that in deciding this case the court does not impugn the doctrine that the accidental discovery of a new compound or new article of manufacture by a person who did not have or retain sufficient knowledge of the process to reproduce the compound, or explain how it was produced, will not invalidate a patent granted to another person who subsequently makes the same compound or article, and explains the method of production. *Ransom* v. *Mayor*, 1 Fish. Pat. Cas. 265; *Tilgham* v. *Proctor*, 102 U. S. 711. That doctrine has no application to this case, for the reason that tanners have long known how to make the new article of manufacture described in the patent; and when such article has heretofore been made, its production was not accidental, but intentional.

With reference to the contention of complainant's counsel that the patent in controversy should be upheld on the strength of the decision in *Smith* v. *Vulcanite Co.*, *supra*, and that no distinction can be drawn between the two cases, it will suffice to say, that in the case cited the patent was upheld on the ground that a new product had resulted from the described process, that differed from all that had preceded it in degree of usefulness and in kind, and that had new uses and properties. In the case at bar the alleged new product is conclusively shown to be old, and the process by which it is produced is also old. For want of patentable novelty the patent is adjudged to be void, and the bill is accordingly dismissed.